**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RANDY HERMAN,** | : | **Civil No. 3:13-CV-1697** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LACKAWANNA COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff, who is proceeding *pro se*, first filed this particular complaint on

June 21, 2013, a complaint which named Lackawanna County, Lackawanna County

Domestic Relations, and two individual staff members of the Lackawanna County

Domestic Relations office as defendants.  Herman's initial complaint was devoid of

any factual recitals, beyond a general assertion that the actions of the defendants were

improper and unreasonable.  Instead, in lieu of reciting facts, Herman simply referred

to a prior lawsuit which he filed in 2009, Herman v. Lackawanna, No. 3:09-CV-1238,

a case which was dismissed by this Court for failure to prosecute some four years ago

1

in 2010.  That prior case, in turn, alleged matters spanning from 2005 through 2008, and thus recited factual matters which were 4-to-8 years old.

Along with this complaint, Herman filed a motion for leave to proceed *in forma pauperis*.  (Doc. 2)  On July 1, 2013, we granted this motion for leave to proceed *in forma pauperis* (Doc. 2) but recommended that the Court dismiss Herman's complaint for failure to timely state a claim upon which relief can be granted, without prejudice to allowing Herman to attempt to correct the deficiencies noted in this complaint by filing an amended complaint which set forth claims within the period of the statute of limitations.  (Doc. 5)  The district court adopted this recommendation on August 12, 2013, and provided Herman 45 days in which to amend his complaint. (Doc. 9)

What then ensued was another period of extensive delay, as Herman sought a half dozen extensions of time in which to amend his complaint.  (Docs. 10-27) Ultimately 5 ½ months elapsed before Herman tendered an amended complaint to this Court.  (Doc. 28)  In reviewing this amended complaint we note that it remains flawed in a number of profound and fundamental ways.  For example, the factual narrative of the amended complaint, which begins in 2002 and concludes in June 2011, entails conduct which falls entirely beyond the two year statute of limitations applicable to federal civil rights actions.  In addition, it is clear from this factual

2

narrative that Herman is inviting us to set aside child support rulings made by the state courts, something we cannot do. Furthermore, many of the defendants named in this action are immune from liability for the actions which they took many years ago in connection with Herman's state domestic relations litigation.

Accordingly, for the reasons set forth below, it is recommended that this amended complaint be dismissed with prejudice.

## II.   **Discussion**

### A.   **Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review**

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by persons who seek leave to proceed *in forma pauperis*. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915(e) which provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or (B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e). This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662, (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In short, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must comply with the statute of limitations, and recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this amended complaint remains subject to summary dismissal on a number of scores as described in further detail below.

**B.**   **Herman's Current Complaint Fails to Meet the Pleading Standards Prescribed by Law Because The Claims Set Forth in the Complaint Are Barred by the Statute of Limitations**

At the outset, the claims set forth in Herman's amended *pro se* complaint still continue to fail to state a claim within the period of the statute of limitations upon

which relief can be granted.  In this regard, when conducting a screening review of

a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the

complaint is barred under the applicable statute of limitations.  As the United States

Court of Appeals for the Third Circuit recently explained when it affirmed the

screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal
> injury actions of the pertinent state. Thus, Pennsylvania's two year
> statutory period applies to [these] claims.  See Lake v. Arnold, 232 F.3d
> 360, 368 (3d Cir.2000).  The limitations period begins when the plaintiff
> knows or had reason to know of the injury forming the basis for the
> federal civil rights action.  Gera v. Commonwealth of Pennsylvania, 256
> Fed.Appx. 563, 564-65 (3d Cir.2007).  Although we have not addressed
> the issue in a precedential decision, other courts have held that although
> the statute of limitations is an affirmative defense,  district court may
> *sua sponte* dismiss a complaint under § 1915(e) where the defense is
> obvious from the complaint and no development of the factual record is
> required.  See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006);
> see also  Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th
> Cir.2006) (citation omitted)(finding that a district court's screening
> authority under § 1915(e) "differentiates in forma pauperis suits from
> ordinary civil suits and justifies an exception to the general rule that a
> statute of limitations  defense should not be raised and considered sua
> sponte.").

Smith v. Delaware County Court, 260 F. App'x. 454, 455 (3d Cir. 2008); see also

Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); Hurst

v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

Applying these standards, we find that the allegations in this *pro se* amended

complaint are still subject to dismissal on statute of limitations grounds.  Specifically,

this complaint recites action by the defendants beginning in 2002 and continuing through June 1, 2011, (Doc. 28, ¶¶11-176), but was first filed on June 21, 2013, more than two years after the last actions taken by the defendants about which Herman complains and nine years after the first of the events recited in this pleading. Therefore, on its face, the complaint is time-barred by the two year statute of limitations generally applicable to civil rights matters.[1]

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years.  42 Pa.C.S. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations.  For example, it is well settled

---

[1]Indeed, the only event cited by Herman which occurred within two years of the filing of this complaint was the dismissal of his state child support case by the court on June 21, 2011, (Doc.28, ¶184), an event which Herman does not allege involved any of the named defendants and an event which Herman does not contend violated his civil rights.

that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)).  See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Herman continues to complain about an array of matters, which commenced in 2002 and allegedly concluded by June 2011.  In every instance, Herman immediately attached a high degree of significance and permanence to the events set forth in this complaint, since he filed a lawsuit that he failed to prosecute relating to these matters in 2009.  Thus, Herman recites well-pleaded facts in his complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by Herman when they first occurred, many years ago.  Thus, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights.  Therefore, in this case a straightforward application of the two-year statute of limitations also compels dismissal of this action as untimely.

Herman cannot save these time-barred claims by resort to the continuing violation theory since that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy."  Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998).  Indeed, with respect to the controlling consideration relating to this equitable tolling doctrine, "the degree of permanence [of the injury, i.e.]-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his

rights," <u>Cowell v. Palmer Township</u>, 263 F.3d 286, 292 (3d Cir. 2001), it is apparent that Herman subjectively identified the gravity and permanence of these events by 2009 since Herman brought a lawsuit in 2009 relating to these precise claims, which he later abandoned in 2010.  More than two years then elapsed before Herman filed the instant complaint.  On these facts, Herman simply cannot evade the bar of the statute of limitations on some continuing wrongs theory, since the wrongs, if any, committed here were fully known by Herman more than two years ago.  Therefore, on the face of the complaint, these claims are all still time-barred.

### B.    **The Rooker-Feldman Doctrine Prevents Herman from Re-litigating these Claims Which He Lost in State Court**

In addition, the <u>Rooker-Feldman</u> doctrine applies here and bars further consideration of this matter, which arises out of a state domestic relations case. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Herman, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x  238, 242 (3d Cir. 2007).  In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik, 228 F. App'x  238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the <u>Rooker-Feldman</u> doctrine in the particular field, Harman's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed.  <u>Kwasnik v. Leblon</u>, 228 F. App'x  238, 242 (3d Cir. 2007).

### D.   <u>Many of These Defendants Are Immune from Liability</u>

Furthermore, in this setting, where Herman, in effect, seeks to re-litigate what is a domestic relations dispute that concluded many years ago, many of the defendants he names in his amended complaint are immune from civil liability.  For example, dismissal of Herman's claims against the Lackawanna County Domestics Relations office is also warranted here since this *pro se* amended complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.  First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI.  By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies.  Moreover, a suit brought against an individual acting in his

or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.  Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania, and the Commonwealth clearly has not waived its immunity.  Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S. §8521(b).  Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."  42 Pa.C.S. §8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to claims involving the various county common

pleas courts and domestic relations agencies, which are defined by statute as institutions of state government.  See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009).  As the United States Court of Appeals for the Third Circuit has aptly observed:  "Pennsylvania's domestic relations agencies, such as [a] County Division of Children and Youth Services, are defined by statute as arms of the state courts and institutions of state government", and are, therefore, entitled to invoke the immunity provided by the Eleventh Amendment to state agencies.  Wattie-Bey v. Attorney Gen.'s Office, 424 F. App'x 95, 98 (3d Cir. 2011).  See, Howard v. New Jersey Div. of Youth & Family Servs., 398 F. App'x 807, 811 (3d Cir. 2010).

Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).  In sum, Herman's federal civil rights claims for damages against the Lackawanna County Domestic Relations office are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. §1983.  Therefore, to the extent that Herman is still

endeavoring to sue a state court agency which is a component of the Commonwealth

of Pennsylvania in this action these claims should all be dismissed.

The scope of these protections also extend to those court personnel named in

the complaint, who take discretionary actions at the direction of the courts.  As this

Court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the
> direction of a judicial officer, also are immune from suit.  See Gallas,
> 211 F.3d at 772-73 (court administrator entitled to immunity for release
> of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d
> 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court
> direction, was immune from suit).  The doctrine of absolute quasi-
> judicial immunity has been applied to court support personnel due to
> "the danger that disappointed litigants, blocked by the doctrine of
> absolute immunity from suing the judge directly, will vent their wrath
> on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail,
> 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d
> 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants
> in the judicial process enjoy quasi-judicial immunity as well.").  Quasi-
> judicial absolute immunity is available to those individuals, . . . who
> perform functions closely associated with the judicial process.
> Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-
> judicial immunity applied to clerk of courts, an administrative assistant
> to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d
> 491, 494 (3d Cir.1967) (holding that judiciary employees executing
> judicial orders are immune from suit); Davis v. Philadelphia County,
> 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity
> applies to court staff, such as clerks of judicial records and court
> reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial and quasi-judicial

officials continue to directly apply here and prevent the plaintiff from maintaining

this civil action for damages against the individual courthouse staff named as defendants in this complaint.  his immunity expressly embraces court personnel like Domestic Relations staff, who perform discretionary functions under the guidance and direction of the courts.   Indeed, courts have specifically held that Domestic Relations agency staff are entitled to assert this immunity in civil rights actions.  For example, in Slawek v. White, No. 91-1164, 1992 WL 68247, at 3 (E.D. Pa. 1992), the court conferred this immunity on domestic relations personnel, noting that such immunity was consistent with case law and stating:

> In Hamill v. Wright, 870 F.2d 1032, 1037 (5th Cir.1989), a director of the domestic relations office was declared to be "entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties." (citing Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984 (1976)).   Here, these Domestic Relations officials' conduct, under the facts relied upon by the plaintiff, in continuing to prosecute the paternity claim was pursuant to Pennsylvania law and Judge Salas' directives, and as such are entitled to immunity.

Slawek, 1992 WL 68247, at 4. See, e.g., Buchanan v. Gay, 491 F. Supp.2d 483 (D. Del. 2007); White v. Green, No. 09-1219, 2009 WL 2412490 (E.D. Pa. 2009); Johnson v. Lancaster County Children and Youth, No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993).  In short, since these courthouse personnel continue to be immune from liability for their judicial and quasi-judicial roles in Herman's prior litigation,

the plaintiff simply may not maintain an action against any of these defendants, and these claims must also be dismissed.

Finally, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Since Herman's latest *pro se* complaint still does not comply with these pleading rules, and does not contain sufficient factual recitals to state a claim upon which relief may be granted, these allegations should be dismissed under 28 U.S.C. § 1915A, and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Moreover, in this case, the Court has previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. This amended complaint fails to state a viable civil rights cause of action, and actually repeat assertions that were previously found to be legally insufficient. Since the plaintiff has been afforded ample opportunity to correct the deficiencies identified in his prior complaint, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Therefore, it is recommended that both this amended complaint be dismissed without further leave to amend.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint should be dismissed with prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

 Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of February, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge